UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CITY OF MADISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:15-CV-101 |
| | ) |
| UBER TECHNOLOGIES, INC. | )   JUDGE CRABB |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**DEFENDANT UBER TECHNOLOGIES, INC.'S
REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

The City of Madison's (the "City's") four-page response to Uber Technologies, Inc.'s ("Uber's") Motion to Dismiss (Doc. Nos. 12–13) does not even meaningfully attempt to save its Complaint from complete dismissal. Through its Complaint, the City seeks to apply existing ordinances regulating those who provide *public* transportation, *i.e.*, common carriers, to Uber's new technology. In its Motion, Uber explains how the City's allegations fail to state a plausible claim that Uber violated Madison General Ordinances §§ 11.06(2), (4)(a), or (4)(b) (the "Public Transportation Ordinances"). This is true for two independent reasons. First, the City has failed to allege sufficient facts to make out a claim that Uber is providing *public* transportation. Second, the City has failed to allege that any actual transportation occurred at all. The City's opposition largely fails to address Uber's legal arguments and instead makes sweeping assertions

1

that bear no relationship to allegations in the Complaint or the ordinances at issue.  In short, the City offers no valid reason preventing this Court from dismissing its ill-fated Complaint.

I.  **The City's Claims Against Uber Fail As A Matter Of Law.**

   A.  **The City's Opposition Relies On The Wrong Legal Standard, And Thus Arrives At The Wrong Result.**

Ever since the Supreme Court's decision in *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007), it has been well settled that a complaint must be dismissed unless it alleges "enough facts to state a claim to relief that is plausible."  A complaint cannot merely rely on "a formulaic recitation of the elements of a cause of action," but rather must provide allegations that raise the plaintiff's "right to relief above the speculative level."  *Id*. at 555.  In its opposition, the City initially appears to acknowledge that it must meet this burden, but it ultimately instead argues for the test in *Conley v. Gibson*, 335 U.S. 41 (1957), under which the City claims that its complaint must be allowed to move forward "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  (Doc. No. 17 at 3 (quoting *Conley*)).  What the City fails to appreciate, however, is that the Supreme Court directly ***rejected*** this language in *Twombly*, stating that the City's preferred formulation here is "best forgotten as an incomplete, negative gloss on an accepted pleading standard."  *Twombly*, 550 U.S. at 563; *see also, e.g., Iqbal v. Ashcroft*, 556 U.S. 662, 670 (2010) (noting that "*Twombly* retired the *Conley* no-set-of-facts test"); *Ass'n of Cleveland Firefighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (affirming district court's dismissal of plaintiffs' complaint for failing to provide factual allegations demonstrating entitlement to relief and citing *Twombly* for proposition that *Conley* is "best forgotten as an incomplete, negative gloss on an accepted pleading standard").

Having started from the wrong standard, the City's opposition not surprisingly arrives at the wrong conclusion.  Rather than point to any actual allegations in its Complaint, the City

2

appears to operate under the assumption that it can now simply posit any set of imagined facts that it wants (under *Conley's* "no set of facts" standard), and then defeat the Motion to Dismiss by reference to those imagined facts. It adopts that approach as to both of the shortcomings that Uber identified in the Complaint—the City's failure to allege that Uber provides transportation to the *public* and the City's failure to allege that any transportation actually occurred. As further described below, as to each, the City now seeks to add material beyond that in its Complaint. That, however, is not the test—having prepared and filed its Complaint, the City must live with the allegations contained therein, and those allegations fail to state a claim for relief that is "plausible" on its face. Thus, Uber's Motion to Dismiss should be granted.

### B. The Complaint Must Be Dismissed Because It Fails To Allege The Essential Element That Ridesharing Services Are Open To The Public Generally.

Uber's Brief in Support of its Motion to Dismiss (Doc. No. 13) shows that under the express terms of the Public Transportation Ordinances and the state statute enabling the City to enact these regulations, the City's Complaint fails as a matter of law. As fully explained in Uber's Motion and supporting brief, no relevant portion of the Public Transportation Ordinances applies to Uber because the City does not allege facts (nor could it) sufficient to establish that Uber provides transportation services to the public generally.

In its opposition brief, the City fails to cite a *single case* contravening Uber's contention that the City's Public Transportation Ordinances cannot and do not apply to it. The City offers no actual analysis of how the allegations in its Complaint bring Uber under the purview of the Public Transportation Ordinances. Instead, the City ignores the issue and simply responds that its allegations are purportedly good enough (under the incorrect *Conley* standard) and makes sweeping statements that Uber ridesharing services are the equivalent to taxicabs, without any reference to actual allegations in the Complaint (which contains allegations insufficient to save

3

the City in any event). By failing to respond directly in any meaningful way to Uber's legal arguments, the City has conceded these points and waived its ability to challenge them. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (a party's "[f]ailure to respond to an argument . . . results in waiver"); *see also Williams v. REP Corp.*, 302 F.3d 660, 667 (7th Cir. 2002) ("Yet, given another opportunity to address the effect of Trial Rule 4.4 in his reply brief, Mr. Williams again ignored the issue . . . . Under these circumstances, we must hold that Mr. Williams has waived any argument [about] Trial Rule 4.4 . . . .").

> **1.    As The City Acknowledges, The Ordinances Were Enacted Pursuant To An Enabling Statute, And That Statute Is Limited To Vehicles That Act As Common Carriers.**

To the extent that the City's opposition offers any arguments on the public-transportation point, those arguments are wrong. First, it is important to note that Uber's argument that the ordinances are limited to *public* transportation rest on *legal* arguments, not factual arguments as the City contends. (Doc. No. 17 at 2). As Uber showed in its Motion to Dismiss (Doc. No. 13 at 7), and the City actually concedes in its opposition brief (Doc. No. 17 at 4), the City's power to require licenses and otherwise regulate those who provide transportation services arises from the state legislature's grant of authority in Wis. Stat. § 349.24. That statute provides that "[t]he council of any city . . . may: (a) [r]egulate and license chauffeurs and operators *of taxicabs* used for hire; [and] (b) [r]egulate and license the *taxicab* business by licensing each taxicab used for hire." Wis. Stat. §§ 349.24(1)(a)-(b) (emphasis added). Because the City's power to enact the Public Transportation Ordinances arises from Wis. Stat. § 349.24, the ordinances are limited to the parameters defined by statute.

In that regard, Uber's Motion showed that, as a matter of statutory interpretation—again, a purely legal issue—the term "taxicab" is traditionally and ordinarily understood to refer to

4

vehicles acting as "common carriers." *See Scales v. Boynton Cab Co.*, 223 N.W. 836, 836 (Wis. 1929) ("A taxicab company is a **common carrier** and owes to its passengers the highest degree of care consistent with the transaction of the business.") (emphasis added). Thus, absent any countervailing definition in the statute (and there is none here), that is how the term must be understood in the statute, too. *See State v. Dinkins*, 794 N.W.2d 236, 240 (Wis. Ct. App. 2010) ("Non-technical words and phrases not defined within the statutory scheme are usually given their common, ordinary, and accepted meaning."). A "common carrier," in turn, is "one who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, **offering his services to the public generally**." *Luman v. ITS Techs. & Logistics, LLC*, 323 S.W.3d 821, 825 (Mo. Ct. App. 2010) (citing *Lone Star Steel Co. v. McGee*, 380 F.2d 640, 645 (5th Cir. 1967)) (emphasis added). Courts have relied on this notion of "offering services to the public generally" to distinguish between private carriers and common carriers. *See id.* (noting that "a common carrier is impliedly one who is engaged in the business of transportation **for anyone who wishes to use the service**, while a private carrier renders . . . service only for certain people or certain businesses." (emphasis added). This common carrier distinction is recognized in case law dating as far back as 1847. *See Durham Transp., Inc. v. Valero*, 897 S.W.2d 404, 408 (Tex. Ct. App. 1995) (quoting *Chevallier v. Straham*, 2 Tex. 115, 119 (Tex. 1847)).

Given that the City concedes, as it must, that the ordinances at issue here were enacted under the authority granted in Wis. Stat. § 349.24, those ordinances are necessarily limited to the commonly understood meaning of "taxicabs," *i.e.*, common carriers. Thus, the **only** question for the Motion to Dismiss is whether the City has alleged, in its Complaint, sufficient facts to raise a

5

plausible claim that ridesharing services using the Uber App are available to the public generally. As shown below (*see infra* at 7–8), it has not.

### 2. The Plain Language Of The Public Transportation Ordinances Confirms They Apply *Only* To Common Carriers.

Indeed, as Uber's Motion also explained, even apart from the limitations that Wis. Stat. § 349.24 places on the City's ability to regulate ridesharing services, the plain language of the ordinances themselves further confirms the ordinances are applicable only to common carriers, *i.e.*, those vehicles carrying the public generally. The cited ordinances appear as part of Chapter 11 of the MGO, which is titled "Public Utilities," which addresses traditional common carriers such as railways, *see* MGO § 11.02, and "motor buses," to the extent that the motor buses are acting as "common carriers," *see id*. § 11.02(a).

The specific ordinances here address "*public* passenger vehicles." The subchapter in which they appear is entitled "Licensing and Regulating *Public* Passenger Vehicles, for Hire." MGO § 11.06 (emphasis added). Similarly, the "purpose" section of subchapter 11.06 expressly acknowledges that the ordinances were adopted for the purpose of regulating *publicly available* transportation. *See* MGO §§ 11.06(1)(a)-(b), (d). The purpose provisions note, for example, that the ordinances are designed to "provid[e] for safe, convenient and efficient *public* transportation" and "provide better *public* service." MGO §§ 11.06(1)(a), (d) (emphases added). Not captured anywhere within the "purpose" section of subchapter 11.06 is an intent to regulate services available through subscriber-only applications.

The City does not respond to *any* of these arguments about the proper meaning of the language in the ordinance (just as it did not respond to the arguments about the statute), choosing again to ignore this set of arguments. Having conceded this interpretive point through its silence, though, the City's Complaint again must be dismissed absent factual allegations supporting a

claim that ridesharing services using Uber's application constitute public transportation. And, in that regard, *Twombly* makes it clear that conclusory allegations will not suffice. The City's Complaint must point to actual *facts*, not bare assertions that Uber ridesharing constitutes public transportation. *Twombly*, 550 U.S. at 556–57 (holding that "a bare assertion of conspiracy will not suffice" to satisfy the pleading standard," rather, "further factual enhancement" is required).

### 3. The City's Attempts To Analogize Uber To A Common Carrier Taxicab Have No Relationship To The Actual Allegations In The Complaint.

Rather than respond to Uber's arguments and clarify how the allegations in its Complaint assert legally cognizable claims that Uber is providing public transportation, however, the City in its opposition instead seeks to raise *new* issues, well beyond the allegations in its Complaint. The City now broadly asserts that "[t]he use of the Uber App to solicit a ride from an Uber driver is no different than the traditional method of using a telephone to solicit a ride from a taxicab driver." (Doc. No. 17 at 2). This analogy is not tethered to the Complaint's allegations (and is factually wrong). Also untethered to the Complaint (and again factually wrong), is the City's new assertion that "[t]he only difference between Uber and a traditional taxicab company is the method by which a passenger solicits a ride . . . ." (*Id.* at 4).

The reason that the City is forced to try to interject new allegations now, though, is that the Complaint itself never alleges (nor could it) *facts* showing that ridesharing using the Uber App is public transportation, like a taxicab. To the contrary, the Complaint expressly alleges that Uber has "developed a *new model* to provide transportation." (Compl. ¶ 3) (emphasis added). And far from providing transportation to the public generally, like a common carrier would, "[t]he Passenger must apply to use the Uber App, and must make a credit card available to pay the fee for the transportation provided." (*Id.*). As these allegations make clear, Uber's business

7

model is built around limiting ridesharing services to those persons who have joined Uber's online community. This model stands in sharp contrast to taxicab services, which are open to the public generally (as a common carrier must be), and which are often initiated by street hails (unlike Uber's app-based approach, which does not permit passengers to simply hail a car on the street or at a taxi stand). The City's argument that ridesharing services facilitated through the Uber App are the equivalent of taxicabs thus must be rejected out of hand, and certainly is not supported by the allegations in the Complaint, which are the only allegations relevant here.

In short, as a matter of law, the Public Transportation Ordinances are limited to regulating common carriers. The City has failed to make sufficient factual allegations (nor could it) to show that ridesharing services using the Uber App fall into that category. Accordingly, the City's Complaint must be dismissed.

### C.   The Complaint Must Be Dismissed Because It Fails To Allege Essential Elements Of Each Count.

Separately, as Uber's Motion also showed, even if the City had alleged (which it has not) that Uber provided public transportation—and thus is subject to the Public Transportation Ordinances—the City's Complaint fails as a matter of law for a second reason. Nowhere in the Complaint does the City allege that Uber (or a third-party transportation provider using the Uber platform) actually *transported* anyone. (*See* Compl. ¶¶ 9–13). Transporting the public is an essential component of each of the forty-two counts brought by the City, and the City's failure to plead this most basic detail dooms the entire Complaint.

The City responds that it "need not allege that the Defendant actually transported passengers to be in violation of the Madison General Ordinances" (Doc. No. 17 at 3), and maintains that viewing an automobile icon on a smartphone suffices to support an allegation that Uber "engaged in the business of transporting passengers for hire" (*id.*). Not so. To be "engaged

in the business of transporting passengers" must require more than transmitting an automobile icon via a mobile application—at the very least, it requires that someone must actually be "transported." Interpreting the "business of transporting" so broadly as to capture the mere act of displaying information about cars on a screen would raise substantial constitutional "void for vagueness" concerns. *See Waldron v. McAtee*, 723 F.2d 1348, 1358 (7th Cir. 1983) (explaining that ordinances must define what is prohibited "with sufficient definiteness that ordinary people can understand what conduct is prohibited" because "[o]therwise a citizen would not have fair notice of what he must do to conform his behavior to the law").

      Nonetheless, for thirty-nine counts (counts 1–39), the City hangs its hat solely on allegations arising from occasions in which two individuals (one a City employee, and one a local taxicab driver) accessed the Uber App on their respective smartphones and ***observed an automobile icon*** within the City of Madison. (Compl. ¶¶ 9–10). The City does not allege that either of these two individuals ever actually received transportation or even witnessed someone being transported. For the remaining three counts (counts 40–42), the City merely alleges that Madison law enforcement cited individuals for violating City ordinances, allegedly by "working as an Uber driver and using the Uber App at that time." (*Id.* ¶¶ 11–13). As with the first thirty-nine counts, the City again fails to allege that the cited individuals actually transported ***anyone***. Indeed, the City fails to plead any *facts* underlying the citations issued to drivers or explain what each driver did to allegedly violate the MGO. That some individuals were convicted of ordinance violations is of no consequence in this proceeding (or, at least without explanation it is not). Uber itself was not cited, convicted, or implicated in those distinct proceedings. The City's failure to allege that Uber transported passengers (or, in fact, that ***anyone*** transported passengers) in connection with any of the forty-two counts is independently fatal to the Complaint.

## **CONCLUSION**

For the foregoing reasons and those set forth in its Motion to Dismiss, Uber respectfully urges this Court to dismiss the City's Complaint.

    Respectfully submitted,
    HALLING & CAYO, S.C.

    By: /s/Michael Schaalman
    Michael H. Schaalman (# 1015424)
    (mhs@hallingcayo.com)
    Jeremy P. Levinson (# 1026359)
    (jpl@hallingcayo.com)
    Patrick T. O'Neill (#1079079)
    (pto@hallingcayo.com)
    HALLING & CAYO, S.C.
    320 East Buffalo St., Suite 700
    Milwaukee, Wisconsin 53202
    (414) 271.3000 (telephone)
    (414) 271.3841 (facsimile)

    *Of Counsel*:
    Douglas R. Cole (Ohio 0070665)
    drcole@organcole.com
    Carrie M. Lymanstall (Ohio 0084393)
    cmlymanstall@organcole.com
    ORGAN COLE LLP
    1330 Dublin Road
    Columbus, OH 43215
    614.481.0900
    614.481.0904 (f)
    *Admitted Pro Hac Vice*

    *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true copy of the foregoing was filed electronically with the Clerk of the Court to be served via operation of the Court's electronic filing system this 30th day of April 2015 to all counsel of record.

                                             /s/ Michael Schaalman
                                             *One of the Attorneys for Defendant Uber Technologies, Inc.*